ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| VIVIANA QUIÑONES SIERRA<br><br>Recurrente<br><br><br>V.<br><br><br>DEPARTAMENTO DE HACIENDA<br><br>Recurrido | TA2025RA00238 | Revisión judicial procedente de la Comisión Apelativa Del Servicio Público<br><br>Caso Núm.:<br>2023-10-1672<br><br><br>Sobre: Clasificación de puestos - PCRU |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 7 de noviembre de 2025.

Comparece la señora Viviana Quiñones Sierra (señora Quiñones Sierra o recurrente) y solicita que revisemos una *Resolución* emitida el 22 de julio de 2025 por la Comisión Apelativa del Servicio Público (CASP). Mediante dicha determinación, se desestimó su *Apelación* referente a la impugnación de la clasificación y retribución de su puesto dispuesta por el Departamento de Hacienda (Hacienda o recurrido).[1] La CASP fundamentó su determinación en la recomendación de la oficial examinadora, quien concluyó que el recurso administrativo se presentó fuera del término jurisdiccional establecido en la Carta Normativa Núm. 1-2023 (Enmendada).[2]

Por los fundamentos que se exponen a continuación, se revoca la *Resolución* emitida por la CASP.

---

[1] Anejo 7 del Apéndice de la *Revisión de Decisión Administrativa* en el Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones, págs. 52-67. Notificada el 23 de julio de 2025.

[2] El 21 de febrero de 2023, la Oficina de Administración y Transformación de los Recursos Humanos (OATRH) emitió la Carta Normativa Núm 1-2023, titulada *Normas para Culminar el Proceso de Implantación del Plan de Clasificación de Puestos del Servicio de Carrera del Gobierno Central, Efectivo al 1 de julio de 2019, y la Nueva Estructura Salarial que Regirá para el Servicio de Carrera del Gobierno Central Efectiva al 1 de enero de 2023*.

**I.**

Este caso se originó el 19 de octubre de 2023, cuando la señora Quiñones Sierra presentó una *Apelación* ante la CASP.[3] En esta, alegó que ocupaba el puesto de carrera de oficial gerencial en la División de Inversiones y Deuda Pública del Negociado del Tesoro del Departamento de Hacienda. Expuso que, mediante comunicación del 5 de julio de 2023, recibida el 25 de septiembre de 2023, se le informó que su puesto fue clasificado como oficial gerencial y que continuaría devengando un salario de $4,773.00, conforme al Plan de Clasificación y Retribución Uniforme de la OATRH.[4] Arguyó que, oportunamente, presentó una revisión para ser clasificada como oficial ejecutivo gubernamental, cuya escala de retribución inicial era de $9,825.00, consideradas su experiencia y funciones laborales. Adujo que tenía derecho a conocer los criterios utilizados en las acciones de personal que la afectaron y beneficiaron a empleados con menor experiencia y responsabilidad.

El 25 de febrero de 2025, la oficial examinadora de la CASP emitió una *Orden,* mediante la cual requirió a la recurrente que presentara el documento en el que Hacienda le notificó su nueva clasificación de puesto y retribución, más la *Solicitud de Revisión Administrativa* presentada ante el Comité Revisor de la agencia.[5]

El 5 de marzo de 2025, la señora Quiñones Sierra presentó una moción en cumplimiento de orden, en la que manifestó que el 22 de febrero de 2023, el Secretario de Hacienda le notificó la determinación recurrida.[6] Señaló que en dicha comunicación se le concedió treinta (30) días para solicitar revisión administrativa y que la Autoridad Nominadora contaba con sesenta (60) días para emitir su decisión,

---

[3] *Íd.*, Anejo 1 en SUMAC, págs. 1-12.
[4] En la referida carta, el entonces Secretario de Hacienda le apercibió a la recurrente que, de no estar de acuerdo con la determinación del Comité Revisor, podía recurrir ante la CASP o realizar una *Solicitud de Arbitraje de Quejas y Agravios*, dentro del término de treinta (30) días calendario, a partir del recibo de la determinación.
[5] *Íd.*, Anejo 3 en SUMAC, págs. 15-17.
[6] *Íd.*, Anejo 4 en SUMAC, págs. 18-30.

término que vencía el 16 de mayo de 2023. Expuso que el 11 de abril de 2023, Hacienda le notificó que recibió su *Solicitud de Revisión Administrativa*. Argumentó que, a partir de tal fecha, la recurrida tenía hasta el sábado, 10 de junio de 2023, prorrogado al lunes, 12 de junio de 2023, para notificar su determinación. Sin embargo, sostuvo que no fue hasta el 25 de septiembre de 2023 que Hacienda le remitió una carta fechada el 5 de julio de 2023 que contenía su decisión respecto a la *Solicitud de Revisión Administrativa*.[7] Por ello, entendió que tal determinación se remitió en exceso del término dispuesto para ello y que, por tanto, era defectuosa.

Posteriormente, el 2 de abril de 2025, la oficial examinadora de la CASP emitió una *Orden* en la que le concedió un término a la señora Quiñones Sierra para evidenciar la fecha en que presentó su *Solicitud de Revisión Administrativa*.[8]

En respuesta, el 10 de abril de 2025, la recurrente informó que el 17 de marzo de 2023, presentó la *Solicitud de Revisión Administrativa*, dentro de los treinta (30) días desde que la Autoridad Nominadora emitió su determinación.[9] Manifestó que, desde esa fecha, la agencia disponía sesenta (60) días para notificar su decisión referente a la *Solicitud de Revisión Administrativa* —hasta el 16 de mayo de 2023—, pero que lo realizó el 25 de septiembre de 2023.

Eventualmente, el 23 de abril de 2025, la oficial examinadora de la CASP emitió un *Informe*, en el que recomendó desestimar la *Apelación* por presentarse fuera del término jurisdiccional establecido en la Carta Normativa Núm. 1-2023, *supra*, que apercibía a los empleados públicos sobre el proceso de solicitar revisión y apelación administrativa. Señaló que la recurrente presentó su *Solicitud de Revisión Administrativa* el 17 de marzo de 2023, por lo que Hacienda

---

[7] Hacienda apercibió a la recurrente sobre su derecho a solicitar revisión administrativa.
[8] *Íd.*, Anejo 5 en SUMAC, págs. 31-32.
[9] *Íd.*, Anejo 6 en SUMAC, págs. 33-51.

tenía hasta el 16 de mayo de 2023 para notificar su decisión. Expresó que como el recurrido no realizó lo anterior, la señora Quiñones Sierra tenía hasta el 15 de junio de 2023 para solicitar la *Apelación*.

No obstante, la oficial examinadora planteó que la recurrente acudió al CASP el 19 de octubre de 2023, luego de recibir la determinación final de la recurrida el 25 de septiembre de 2023. Indicó que dicha determinación tardía carecía de efecto jurisdiccional, ya que no podía interrumpir ni extender el término dispuesto en la Carta Normativa Núm. 1-2023, *supra*. Añadió que, aunque el *Reglamento Procesal de la extinta Comisión Apelativa del Sistema de Administración de Recursos Humanos en el Servicio Público (CASARH)*, Reglamento Núm. 7313 de 7 de marzo de 2007, Departamento de Estado, disponía un término de treinta (30) días contados a partir de la notificación de la decisión de la Autoridad Nominadora para comparecer ante la CASP, el mismo no aplicaba al caso. Ello, puesto que la Carta Normativa Núm. 1-2023, *supra*, establecía un término distinto de sesenta (60) días para atender la revisión administrativa y treinta (30) días adicionales para apelar si no mediaba respuesta de la agencia.

A la luz de lo anterior, el 22 de julio de 2025, CASP emitió una *Resolución* en la que adoptó el *Informe* de la oficial examinadora y desestimó la *Apelación* de la recurrente por falta de jurisdicción.[10]

Inconforme con la decisión, la señora Quiñones Sierra presentó una *Moción de Reconsideración*, en la que alegó que su *Solicitud de Revisión Administrativa* ante Hacienda interrumpió el término para apelar en la CASP.[11] Sostuvo que el recurrido acogió su solicitud el 11 de abril de 2023 y notificó la determinación final el 25 de septiembre de 2023, fecha desde que comenzó a decursar los treinta (30) días para apelar ante la CASP, lo cual efectuó el 19 de octubre

---

[10] *Íd.*, Anejo 7 en SUMAC, pág. 52-67. Notificada el 23 de julio de 2025.
[11] *Íd.*, Anejo 8 en SUMAC, págs. 68-73.

de 2023. Argumentó que la inacción de la agencia no podía imputarse a los empleados ni privarla de revisar una decisión adversa.

Así las cosas, el 18 de agosto de 2025, la CASP denegó la reconsideración.[12] Cabe señalar que la comisionada asociada Rodríguez Ramos disintió al entender que la CASP ni la OATRH podían fijar un término jurisdiccional distinto al dispuesto en el Artículo 13 del *Plan de Reorganización de la CASP*, Plan de Reorganización Núm. 2-2010, según enmendada, 3A LPRA Ap. XIII, Art. 13, para que un empleado afectado por una determinación de una Autoridad Nominadora acudiera al foro. Precisó que la Carta Normativa Núm. 1-2023, *supra*, añadía un requisito no previsto por ley y que el término de sesenta (60) días era directivo, ya que de considerarse jurisdiccional sería nulo. A su juicio, la recurrente apeló dentro del plazo que disponía y se le privó de su derecho a impugnar una determinación final de la Autoridad Nominadora. Asimismo, estableció que la OATRH carecía de facultad para disponer un término jurisdiccional para recurrir ante la CASP u otro foro, por lo que hubiese declarado Ha Lugar la reconsideración.

Aún insatisfecha con la decisión mayoritaria, la señora Quiñones Sierra presentó una *Revisión de Decisión Administrativa* ante este Tribunal y señaló que la CASP cometió el siguiente error:

> ERRÓ LA COMISIÓN AL DECLARAR DESESTIMAR (sic) LA APELACIÓN POR SUP[U]ESTA FALTA DE JURISDICCIÓN SIN TOMAR EN CONSIDERACIÓN QUE LA RECURRENTE PRESENTÓ SU APELACIÓN DENTRO DEL TÉRMINO DE TREINTA (30) DÍAS ESTABLECIDO PARA ESTE FIN Y QUE COMIENZA A TRANSCURRIR DESDE QUE EL EMPLEADO RECIBE LA NOTIFICACIÓN DE LA DETERMINACIÓN FINAL DE LA AGENCIA SIN OBSERVAR EL TRÁMITE PROCESAL DE LA REVISIÓN ADMINISTRATIVA QUE SE LLEVÓ A CABO EN EL DEPARTAMENTO.

En esencia, la recurrente reiteró que recibió la notificación de la determinación final de Hacienda el 25 de septiembre de 2023 y presentó su apelación el 19 de octubre de 2023, dentro del término

---

[12] *Íd.,* Anejo 9 en SUMAC, págs. 74-86.

de treinta (30) días dispuesto en el *Plan de Reorganización de la CASP, supra,* su ley habilitadora. Indicó que la CASP era un organismo especializado de adjudicación de controversias sobre la administración de los recursos humanos en el servicio público, conforme al mandato expreso el Artículo 8 (f) del *Plan de Reorganización de la CASP, supra,* Art. 8 (f). Adujo que una agencia no podía crear reglamentos que alteraran los plazos establecidos por ley, ya que ello constituiría un acto *ultra vires.* Además, arguyó que la OATRH se excedió de sus poderes delegados al imponer un término jurisdiccional de sesenta (60) días, contados a partir de los sesenta (60) días sin que la Autoridad Nominadora emitiera una determinación final.

La recurrente esgrimió que, dado que la oficial examinadora recomendó desestimar su apelación con base en la Carta Normativa Núm. 1-2023, *supra,* se privó indebidamente a la CASP de jurisdicción. Por último, alegó que la mera referencia a dicha carta no justificó excluir la jurisdicción de la CASP y que esa interpretación vulneró su derecho a revisar la determinación final de Hacienda.

Por su parte, el 17 de octubre de 2025, Hacienda, representado por la Oficina del Procurador General de Puerto Rico (OPG), solicitó la confirmación de la decisión recurrida. Alegó que la *Apelación* ante la CASP se presentó fuera del término dispuesto en la Sección 1.2 del *Reglamento Procesal de la CASARH, supra,* y la Carta Normativa Núm. 1-2023, *supra.* Explicó que, tras la notificación del 22 de febrero de 2023, la recurrente tenía treinta (30) días para solicitar revisión y Hacienda sesenta (60) días para resolver, acción que al no concretarse, significó que el término para apelar ante la CASP venció el 16 de junio de 2023. Puntualizó que la agencia había perdido jurisdicción sobre la *Solicitud de Revisión Administrativa,* por lo que su notificación fue inconsecuente. Además, destacó que la carta normativa se emitió a tenor con la facultad conferida a la OATRH por

la Sección 4.3 de la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, Ley Núm. 8-2017, 3 LPRA sec. 1470, para aprobar, enmendar, derogar y promulgar normas, y reglamentos de aplicación general al Sistema de Administración y Transformación de los Recursos Humanos del Gobierno.

Tras evaluar los planteamientos de ambas partes, procedemos a exponer la normativa jurídica aplicable a este caso.

## II.

### A. Revisión judicial

La revisión judicial faculta a este Tribunal a examinar las decisiones, órdenes y resoluciones finales de un foro administrativo. Art. 4.006(c) de la *Ley de la Judicatura*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y; Sec. 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672 (LPAUG). Su fin es asegurar que el foro administrativo actuó dentro del poder delegado y conforme a la política legislativa. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Forum, 2013, pág. 669.

Las determinaciones de hechos de la agencia se sostendrán si se basan en la evidencia sustancial contenida en el expediente administrativo. Sec. 4.5 de la LPAUG, *supra*, sec. 9675. Sin embargo, las conclusiones de derecho se revisarán en todos sus aspectos. *Íd.*; *Vázquez y otro v. Con. Tit. Los Corales,* 2025 TSPR 56.

Previamente, los tribunales otorgaban deferencia a la interpretación administrativa cuando era razonable y basada en la pericia técnica. *Íd.* No obstante, en Vázquez y otro v. Con. Tit. Los Corales, *supra,* el Tribunal Supremo de Puerto Rico acogió la interpretación                    establecida                    por                    la                    Corte

Suprema de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024), en cuanto a que los tribunales deben ejercer un juicio independiente al evaluar la actuación administrativa, sin otorgar deferencia a su interpretación jurídica. *Íd.* Pues, los tribunales tienen una perspectiva más amplia para considerar estas controversias, guiado por la preservación de un sistema robusto del Derecho, reforzado por la confianza pública en los procesos administrativos y judiciales. *Íd., citando a South Porto Rico Sugar Co. v. Junta Azucarera*, 82 DPR 847 (1961).

Por otro lado, las cuestiones mixtas de hechos y de derecho se considerarán como controversias de derecho, por lo que serán revisables en toda su extensión. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Rivera v. A&C Development Corp.*, 144 DPR 450 (1997).

### B. Jurisdicción de los foros administrativos

La jurisdicción es el poder o la autoridad para considerar y decidir casos y controversias. *Muñoz Barrientos v. ELA et al.*, 212 DPR 714, 726 (2023); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-386 (2020). Al igual que los tribunales, los foros administrativos no pueden asumir jurisdicción discrecionalmente. *Ayala Hernández v. Consejo Titulares*, 190 DPR 547 (2014). La falta de jurisdicción no puede ser subsanada y conlleva la nulidad del dictamen. *Allied Mgmt. Group v. Oriental Bank*, *supra*, pág. 386. Cuando un foro carece de jurisdicción para intervenir en un asunto, procede así declararlo y desestimar inmediatamente el recurso sin entrar en sus méritos. *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019); *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012).

Para determinar la jurisdicción de un foro administrativo, se debe analizar el poder que la Asamblea Legislativa le delegó. *Benítez Nieves v. ELA et al.*, 202 DPR 818 (2019); *Pueblo v. Barahona Gaitán*, 201 DPR 567 (2018); *Ayala Hernández v. Consejo Titulares*, *supra*. La

ley habilitadora define los límites del poder y las funciones de cada agencia. *Amieiro González v. Pinnacle Real Estate*, 173 DPR 363 (2008); *Caribe Comms., Inc. v. PRTCo.*, 157 DPR 203 (2002). Así, una agencia solamente puede ejercer las facultades expresamente conferidas por ley o las inherentes a su encomienda principal. *Íd.* Empero, si la actuación administrativa excede los poderes delegados, la misma se considerará *ultra vires* y, por ende, nula. *Íd.*

En consecuencia, ninguna agencia puede apartarse de su ley habilitadora, aun cuando persiga un fin legítimo, puesto que ni la necesidad o conveniencia sustituyen el mandato legislativo. *Ayala Hernández v. Consejo Titulares*, *supra*. Pues, un reglamento debe complementar la ley, no contradecirla, ya que, de hacerlo, resulta inválido. *Pueblo v. Barahona Gaitán citando a* D. Fernández Quiñones, *op. cit.*, pág. 161. Previamente, el Tribunal Supremo dispuso que una carta normativa emitida por una agencia en el ejercicio de sus funciones cuasi-legislativas no podía estar en conflicto con la ley o la jurisprudencia vigente, puesto que el poder de reglamentación delegado no la faculta a sustituir el criterio legislativo o judicial. *Aulet Lebrón v. Dpto. Servicios Sociales*, 129 DPR 1 (1991). Si el reglamento está en conflicto con la ley habilitadora que permite y promueve su creación, la disposición reglamentaria tiene que ceder ante el mandato legislativo. *JP v. Frente Unido I*, 165 DPR 445 (2005).

De esta manera, un reglamento no puede ampliar ni restringir los derechos o remedios expresamente reconocidos por ley, ni imponer normas arbitrarias o caprichosas, ajenas al propósito legislativo. *Pueblo v. Barahona Gaitán, supra, citando a* J. Echevarría Vargas, <u>*Derecho Administrativo Puertorriqueño*</u>, 4ta. ed., San Juan, Ed. Situm, 2017, pág. 130; *Perfect Cleaning v. Cardiovascular*, 162 DPR 745 (2004).

Los entes administrativos pueden adoptar reglas legislativas o no legislativas. Las primeras crean o modifican derechos, imponen

obligaciones y establecen pautas de conducta con fuerza de ley, mientras que las segundas son pronunciamientos administrativos que orientan la gestión interna sin alterar los derechos u obligaciones de los individuos. *R&B Power, Inc v. Junta de Subastas ASG*, 213 DPR 685 (2024); *Sierra Club et al. v. Jta. Planificación*, 203 DPR 596 (2019); *González v. ELA*, 167 DPR 400 (2006). La Sección 1.3 (m) de la LPAUG, *supra*, sec. 9603, define una regla o reglamento como toda norma de aplicación general que interprete o ejecute la política pública o la ley, o regule los procedimientos y prácticas de una agencia con fuerza de ley, incluyendo su enmienda, revocación o suspensión, excluyendo lo siguiente:

> (1) Reglas relacionadas con la administración interna de la agencia o comunicaciones internas o entre agencias que no afectan los derechos o los procedimientos o prácticas disponibles para el público en general.
>
> (2) Documentos guía según definidos en esta Ley.
>
> (3) Órdenes de precios del Departamento de Asuntos del Consumidor y otros decretos u órdenes similares que se emitan o puedan emitir en el futuro por otras agencias, y que meramente realizan una determinación de uno o varios parámetros de reglamentación con base a un reglamento previamente aprobado y que contiene las normas para su expedición.
>
> (4) Formas y sus instrucciones, siempre que no constituyan documentos guía.

Estas excepciones abarcan las reglas no legislativas, como las procesales, declaraciones interpretativas o de política general —por ejemplo, cartas circulares, directrices y memorandos—, que buscan uniformar la práctica administrativa o interpretar las leyes que las agencias aplican. *R&B Power, Inc v. Junta de Subastas ASG, supra*, citando a H. Meléndez Juarbe, *Derecho Administrativo*, 73 Rev. Jur. UPR 509 (2004). Dichas reglas carecen de la fuerza de ley atribuible a los reglamentos aprobados mediante el procedimiento cuasi-legislativo de la LPAUG, *supra. Íd.*

Asimismo, cuando el legislador pretende que un término sea jurisdiccional o fatal, lo dispone expresamente; de no hacerlo, se

considera directivo. *Benítez Nieves v. ELA et al., supra; In re Godinez Morales,* 161 DPR 219 (2004).

Por último, al evaluar la validez de una reglamentación, los tribunales deben considerar: (1) si la actuación administrativa está autorizada por ley; (2) si se delegó el poder de reglamentación; (3) si la reglamentación promulgada se mantiene dentro de esos poderes; (4) si se cumplió con las normas procesales de la ley orgánica, y (5) si la reglamentación es arbitraria o caprichosa. *Ayala Hernández v. Consejo Titulares, supra; Vista Healthcare v. Hospicio La Fe ET AL.,* 190 DPR 56 (2014); *OEG v. Santiago Guzmán,* 188 DPR 215 (2013). En tal ejercicio, la interpretación del estatuto habilitador debe ser armónica con la intención legislativa, la política pública y el interés social que persigue. *Ayala Hernández v. Consejo Titulares, supra; ASG v. Mun. San Juan,* 168 DPR 337 (2006). Además, se debe evitar lecturas aisladas que produzcan resultados desatinados, confusos, absurdos o irrazonables. *Íd.*

### C. CASP

Mediante el *Plan de Reorganización de la CASP, supra,* se creó la CASP como un foro cuasi-judicial con jurisdicción apelativa exclusiva para resolver las controversias de empleados públicos[13] relacionadas con las acciones o decisiones de los administradores o municipios en asuntos obrero-patronales y del principio de mérito. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023); *Torres Pagán et al. v. Mun. de Ponce,* 191 DPR 583 (2014); *Beltrán Cintrón et al. v. ELA et al., supra; Colón Rivera et al. v. ELA, supra.* A saber, la CASP tiene jurisdicción exclusiva sobre las apelaciones surgidas como consecuencia de acciones o decisiones de los administradores individuales cuando, entre otros, un empleado del Sistema de

---

[13] Atinentes a los empleados cobijados tanto bajo la *Ley de Relaciones del Trabajo del Servicio Público de Puerto Rico,* Ley Núm. 45-1998, 3 LPRA sec. 1451 et seq. y la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, supra.*

Administración de Recursos Humanos no cobijado bajo la *Ley de Relaciones del Trabajo del Servicio Público de Puerto Rico, supra,* alegue que una acción o decisión vulneró derechos reconocidos por la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, supra,* o cualquier otro asunto relacionado con la administración de los recursos humanos que no esté regulado por otras leyes o convenios colectivos. Art. 12 del *Reorganización de la CASP, supra,* Art. 12.

El Artículo 13 del *Plan de Reorganización de la CASP, supra,* Art. 13, establece que el término jurisdiccional para iniciar una querella o apelación ante la CASP es de treinta (30) días, contados a partir de la fecha en que se le notificó la acción o decisión objeto del recurso. De otro lado, la Sección 1.2 del *Reglamento Procesal de la CASARH, supra,*[14] dispone lo siguiente:

a. La solicitud de apelación se radicará en la Secretaría de la Comisión dentro del término jurisdiccional de treinta (30) días consecutivos a partir de la fecha de notificación de la acción o decisión objeto de apelación en caso de habérsele cursado comunicación escrita, o desde que advino en conocimiento de la acción o decisión por otros medios.

b. De no existir una determinación final escrita, y la parte afectada hubiese hecho un planteamiento o reclamo, por escrito a la Autoridad Nominadora, y no reciba respuesta alguna en los siguientes sesenta (60) días desde que cursó la misiva, la parte afectada tendrá un plazo jurisdiccional de treinta (30) días, contados a partir del vencimiento del término de sesenta (60) días, para presentar una solicitud de apelación ante la Comisión.

**D. Plan de clasificación de los puestos en el servicio de carrera de la Rama Ejecutiva**

Uno de los objetivos de la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico,* supra, sec. 1469a, es establecer un sistema de clasificación de puestos que fortaleciera el principio de mérito y la igualdad entre los empleados públicos. Para cumplirlo, la Asamblea Legislativa delegó

---

[14] La CASP adoptó el *Reglamento Procesal de la CASARH, supra,* mediante el Memorando Especial CASP ME 2010-1. Sin embargo, el mismo se derogó por virtud del *Reglamento Procesal de la CASP,* Reglamento Núm. 9697, que el Departamento de Estado aprobó el 19 de septiembre de 2025.

en la OATRH la centralización y unificación de los planes de clasificación de las agencias e instrumentalidades de la Rama Ejecutiva. Sec. 6.2 de la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, supra,* sec. 1472b. A su vez, se le otorgó al director de dicha oficina la facultad de aprobar, enmendar o derogar normas y directrices de conformidad con la LPAUG, *supra,* para regir las relaciones con las instrumentalidades públicas, agencias y los municipios, así como reglamentos para la adecuada administración del estatuto Sec. 4.3 de la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, supra,* sec. 1470b.

El 21 de febrero de 2023, la OATRH emitió la Carta Normativa Núm. 1-2023, *supra,* con el fin de explicar la implantación del plan de clasificación y la estructura salarial aplicable al servicio de carrera. En su inciso VII, la carta estableció el siguiente procedimiento de revisión administrativa:

> [...]
> 1. Del empleado no estar de acuerdo con la acción notificada, se le apercibirá su derecho, mediante comunicación escrita, a presentar una solicitud de revisión administrativa ante la Autoridad Nominadora de la agencia que pertenece, dentro del término de treinta (30) días calendario, contados a partir del recibo de la comunicación.
>
> 2. Del empleado presentar una solicitud de revisión administrativa, su reclamación se referirá a un Comité Revisor, que tendrá la encomienda de evaluar los planteamientos con relación a la implantación del Plan de Clasificación de Puestos y las correspondientes estructuras salariales. Dicho Comité formulará sus recomendaciones y las remitirá a la Autoridad Nominadora.
>
> 3. De la Autoridad Nominadora acoger la recomendación del Comité Revisor en cuanto a la reasignación de una clase a una escala superior, procederá a enviar a la OATRH una comunicación en la que justifique por qué se recomienda la reasignación de dicha clase a una escala superior. La misma será evaluada por la OATRH. No obstante, la Autoridad Nominadora deberá contestar al empleado que por tratarse de un aspecto relacionado a las Estructuras Salariales se refirió a la OATRH la revisión de la escala, ya que es en esta en quien recae la facultad de administrar las Estructuras Salariales.
> 4. Cada Autoridad Nominadora determinará el periodo de tiempo que concederá a su respectivo Comité Revisor para que éste presente su recomendación. El periodo de tiempo contado a partir de la presentación de [la] solicitud de

revisión administrativa hasta que la Autoridad Nominadora notifique al empleado de su determinación nunca podrá exceder de sesenta (60) días calendarios. Este término de tiempo incluye el tiempo que tiene el Comité Revisor para emitir sus recomendaciones.

5. La Autoridad Nominadora tendrá un término de sesenta (60) días calendario contados a partir del recibo de la solicitud del empleado, para notificarle mediante comunicación escrita, la determinación tomada con los fundamentos en que apoya la misma.

6. De la decisión en torno a la revisión administrativa radicada no resultar satisfactoria, el empleado podrá recurrir mediante apelación ante la CASP dentro del término de treinta (30) días calendario, a partir de la comunicación de la agencia.

7. Si dentro del término de sesenta (60) días calendario del empleado haber presentado por escrito su solicitud de revisión administrativa, la agencia no ha tomado una determinación sobre su caso, este podrá recurrir ante la CASP para presentar una Apelación, dentro del término de treinta (30) días calendario, contados a partir del vencimiento de los sesenta (60) días. [...]

Esbozada la normativa jurídica, corresponde aplicarla a los hechos de este caso.

**III.**

En el caso que nos ocupa, la señora Quiñones Sierra señaló que la CASP erró al desestimar su apelación por falta de jurisdicción, al aplicar indebidamente el término dispuesto en la Carta Normativa Núm. 1-2023, *supra*, emitida por la OATRH. La recurrente argumentó que dicho término no podía prevalecer sobre el establecido en el *Plan de Reorganización de la CASP*, *supra*, el cual dispone que el recurso de apelación administrativa debe presentarse dentro de treinta (30) días a partir de la notificación de la determinación final de la agencia. A su juicio, su *Apelación* presentada el 19 de octubre de 2023 fue oportuna y conforme a derecho, luego de recibir la notificación final de Hacienda el 25 de septiembre de 2023.

La jurisdicción de los foros administrativos emana de su ley habilitadora y no puede ampliarse ni restringirse mediante reglamento o carta normativa. Pues, ninguna agencia puede asumir facultades no delegadas por la Asamblea Legislativa ni alterar los

términos dispuestos por esta. Así, toda actuación que exceda los poderes conferidos constituye un acto *ultra vires* y, por ende, nulo.

En este caso, el Artículo 13 del *Plan de Reorganización de la CASP, supra,* Art. 13, dispone que el término jurisdiccional para presentar una apelación ante la CASP es de treinta (30) días, contados a partir de la notificación de la decisión objeto del recurso. Este mandato legislativo es imperativo y no puede ser modificado mediante una disposición administrativa.

Si bien la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, supra,* delegó en la OATRH la facultad de adoptar normas y reglamentos para la administración del sistema de recursos humanos, dicha autoridad debe ejercerse en armonía con el estado de derecho vigente. Ello, puesto que el poder de reglamentación delegado a una agencia no la faculta a sustituir el criterio legislativo o judicial. Por consiguiente, la OATRH carece de autoridad para alterar el término jurisdiccional en cuestión ni para limitar los derechos que la Asamblea Legislativa reconoció a los empleados públicos. Por tanto, dado que la Carta Normativa Núm. 1-2023, *supra,* estableció un término distinto al dispuesto en el *Plan de Reorganización de la CASP, supra,* la OATRH se excedió de sus poderes delegados y su actuación fue *ultra vires.* La Asamblea Legislativa nunca contempló una estructura en la que la falta de respuesta de la agencia dentro de sesenta (60) días limitara la jurisdicción conferida por ley a la CASP.

Más importante aún, la OATRH carece de autoridad para imponer términos y condiciones procesales a otros organismos administrativos o judiciales. Su facultad se circunscribía a la administración interna del sistema de recursos humanos de la Rama Ejecutiva, no a regular el ejercicio de jurisdicción que rige una entidad cuasi-judicial como lo es la CASP. Pretender lo contrario

implicaría permitir que la agencia subordinara la jurisdicción de otro ente administrativo creado por mandato legislativo.

De los hechos no controvertidos surge que la señora Quiñones Sierra presentó su *Solicitud de Revisión Administrativa* el 17 de marzo de 2023 y que Hacienda notificó su determinación final el 25 de septiembre de 2023. De conformidad con el Artículo 13 del *Plan de Reorganización de la CASP, supra,* Art. 13, el término para apelar comenzó a contarse a partir de esa fecha. Así, la *Apelación* presentada el 19 de octubre de 2023, fue presentada dentro del término de treinta (30) días dispuesto por ley. La actuación de la CASP, al aplicar un término reglamentario contrario a lo dispuesto en su ley habilitadora y que carece de fuerza de ley, menoscabó el derecho de la recurrente a la revisión de una determinación final y vulneró su propia jurisdicción. En consecuencia, la desestimación de la apelación fue improcedente.

Por todo lo anterior, este Tribunal concluye que la *Apelación* administrativa se presentó dentro del término jurisdiccional aplicable y que la OATRH, al imponer un término distinto mediante la Carta Normativa Núm. 1-2023, *supra,* se extralimitó de sus poderes delegados. Por consiguiente, se revoca la *Resolución* recurrida y se devuelve el caso al foro administrativo para que continúe con el trámite correspondiente.

**IV.**

Por los fundamentos que anteceden, se revoca la determinación recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones